[L. A. No. 899.    Department One.—July 23, 1901.]

## CITY OF SANTA ANA, Appellant, v. D. GILDMACHER et al., Respondents.

EMINENT DOMAIN—DENIAL OF NECESSITY—EVIDENCE—PLEADING.— In an action by a city to condemn a strip of land for a sewer, the defendant, under the general denial of the necessity to construct the sewer over the proposed line as alleged in the complaint, may give evidence to show that the sewer could as readily be located along a designated street of the city; but if such defense be specifically pleaded in the answer, it is not error to allow the answer to stand as against a demurrer.

ID.—QUESTION OF FACT—INSTRUCTION.—In such an action, the question of the necessity of the condemnation is one of fact, to be determined by the jury, in view of all the evidence in the case; and where there is evidence directly in support of such issue, an instruction to the jury to find thereon in favor of the defendant, is a charge with respect to matters of fact, within the meaning of the prohibition contained in section 19 of article VI of the constitution.

APPEAL from a judgment of the Superior Court of Orange County and from an order refusing a new trial.    J. W. Ballard, Judge.

The facts are stated in the opinion.

W. F. Heathman, for Appellant.

Victor Montgomery, for Respondents.

CHIPMAN, C.—Action to condemn right of way for sewer. Defendant Jacobson was a tenant of defendant Gildmacher, and made default. Defendant Gildmacher answered. At the close of the evidence, the jury, on motion of defendant Gildmacher and by direction of the court, rendered a verdict that there was no necessity for taking the property described in the complaint, and judgment was entered accordingly. Plaintiff appeals from the judgment and from the order denying its motion for a new trial.

The complaint sets forth with sufficient particularity the location, general route, and termini of the proposed line for a sewer of eight inches in diameter, in the city of Santa Ana, from Ross Street to Sycamore Street. It was proposed to run

the sewer from the center of Ross Street, commencing at a point ninety-five feet north of Fourth Street, and it was resolved by the city trustees to run the sewer east on a direct line from this point, and parallel with Fourth Street, to a manhole in sewer on Sycamore Street, three blocks distant, crossing Birch Street and West Street in its route, and three blocks of lots, in private ownership, in one of which blocks defendant Gildmacher owned certain improved lots situated on the proposed line of sewer. He objected to the construction of the sewer through his property, and hence the action to condemn the right of way in question. Fourth Street was at the time paved with asphaltum from Ross Street, two blocks, to West Street, but the street was not paved from West Street to Sycamore Street. There was a sewer on the south side of Fourth Street. The board of trustees passed a resolution declaring "that the public interest and convenience required that a right of way for a sewer over, under, and across the lot of land owned by D. Gildmacher be obtained; that the strip of land necessary for said sewer be ten feet wide and sixty-four feet long, and described as follows." A description of the land proposed to be taken is given, and it was provided that the sewer should be laid not less than 8½ feet deep.

1. Defendant pleaded, as a fourth and separate defense, that plaintiff is the owner of the streets and alleys of the city, upon which a complete system of public sewers can be constructed without interfering with the private property of its citizens, and that there is no necessity for taking any private property for sewer purposes; that defendant's property fronts sixty-four feet on Fourth Street, which is a public highway eighty feet wide, in which there is ample room to construct the proposed sewer, and that all the private property lying to the north of Fourth Street and to the east of West Street could be as readily drained by a sewer laid along West Street to the intersection of Fourth Street, and thence along Fourth Street, in front of defendant's property. It is alleged that the land is level along these streets, with a gradual fall, the same as along the proposed line of sewer through the private property of defendant.

Plaintiff interposed a demurrer to the answer, on the ground of insufficiency of facts, which was overruled as to the fourth defense. It is contended that the court erred "in allowing defendant to allege and describe a different route for the line

of sewer than the one described in the complaint, and that if the line described was not suitable, he should have confined his efforts and his evidence in pointing out the defects of the proposed line of sewer across defendant's land, but that there is no precedent for allowing defendant to set up in his answer a rival line of sewer which he claims is better."

The city can, in this proceeding, acquire no right to lay a sewer, "except in exact accordance with the specifications contained in the complaint" (*Pasadena* v. *Stimson*, 91 Cal. 238); and defendant's suggestion of a better line is not pleaded with the view of having it adopted and adjudged as the line to be used; it was pleaded for the purpose of showing that an equally good line over the streets of the city was available, and that by using the streets the injury to defendant could be avoided. We think he could have shown these facts under the general denial of the necessity to construct the sewer over the proposed line, as alleged in the complaint; and hence it was not essential to the defense that the facts be alleged.   It was held error, in *Pasadena* v. *Stimson*, 91 Cal. 238, to exclude evidence for the defendants, to the effect that a much shorter route than that proposed had been surveyed, upon a better grade, through lands not thickly settled.   It was certainly material to the issue of necessity to show that the sewer could be located along a street, instead of through the private property bounded by that street, although by no means necessarily conclusive on that issue.   It may be conceded that this fact, as well as other material probative facts bearing upon the question of necessity, need not be pleaded in the answer, but we can see no prejudicial error in the order of the court allowing the answer to stand, even though it contained averments of fact which might have been shown under the general issue.

2. After the plaintiff had rested and the defendant had put in his evidence, the defendant moved the court to "instruct the jury to render a verdict in favor of the defendant, on the ground that there is no proof in this case to show any necessity to take the property of defendant for the public use."   Thereupon the trial judge remarked at considerable length upon the evidence before the jury, discussing, in the course of his remarks, both the law and the facts, concluding as follows: "So, gentlemen, in the case under discussion, I think it is my duty to instruct you, and I do so instruct you, upon that question of necessity, to find for the defendant, and I have prepared a

form, for use if you should find according to my instructions, for your verdict. I will say, under these instructions you are not obliged to find for the defendant, but may find to the contrary." The form of verdict called for answer "yes" or "no" as to whether it was necessary to take defendant's property described in the complaint. The jury answered "no," as the court in fact instructed them to do, and judgment followed accordingly. Appellant urges the proceeding as error.

Section 19 of article VI of the constitution reads: "Judges shall not charge juries with respect to matters of fact, but may state the testimony and declare the law." The provision was the same in the constitution of 1849.

It was said in *People* v. *Welch*, 49 Cal. 174, that this provision applies alike to civil and criminal cases, and it has been so applied in numerous instances. It was said in the case cited: "In a proper case, the court may act on the assumption that there is no evidence in respect to a particular issue, and grant a nonsuit, or advise an acquittal, or frame its charge to the jury, without reference to the existence of facts as to which no evidence has been produced. . . . The 'matters of fact' as to which the court is not permitted to charge the jury are the facts contested, or in some degree sought to be established by evidence."

In *Weiderkind* v. *Tuolumne etc. Co.*, 65 Cal. 431, the trial court charged the jury that if they found that defendant's dam did not have sufficient gates to let out the water, so as to prevent any break occurring below the top of the dam from being enlarged by a continual flow of water through it, then said dam is insufficiently and negligently constructed. On appeal, this court said that the trial court might instruct as to the degree of care required in the construction of the dam, and that if defendant neglected to exercise that degree of care and vigilance, it would be liable in damages, but the court could not instruct the jury that .the dam was insufficiently and negligently constructed, unless it had gates sufficient for a certain purpose, and in doing so it charged upon matters of fact.

In the case of *Holloway* v. *Pasadena etc. Ry. Co.*, 130 Cal. 177, the trial court directed a verdict for the defendant, where the question was, whether plaintiff's injury was caused by defendant's negligence. It was said there: "It was the province of the judge to .determine whether or not the evidence offered

by plaintiff had any legal tendency to establish negligence, and it was for the jury to say, after weighing and considering all the evidence, whether or not the negligence had been sufficiently proven. If the evidence on the part of the plaintiff was such that the jury would have the right to infer negligence therefrom, the court did not have the right to usurp the function of the jury and take the case from them. . . . The test is this: Would the evidence on the part of the plaintiff be sufficient to sustain a verdict in his favor, if such verdict had been rendered?"

In an action to condemn private property for a public use, the question of necessity is one of fact, to be determined by the jury, in view of all the evidence in the case. (*Spring Vall'y Water Works* v. *Drinkhouse*, 92 Cal. 528.) The evidence should show that the land is reasonably required for the purpose of effecting the object of its condemnation. (*Spring Valley Water Works* v. *Drinkhouse*, 92 Cal. 528.)

I think that the court invaded the functions of the jury in directing a verdict for the defendant. The court took from the jury the principal issue of fact in the case, and in so doing made all other issues immaterial. The court charged the jury in respect of matters of fact, in the sense of the constitutional prohibition. If there had been no evidence tending to show a reasonable necessity for taking defendant's property, it would not have been prejudicial error for the court to grant a nonsuit (*In re Spencer*, 96 Cal. 448); or if the evidence had been such as that a verdict for plaintiff would have been contrary to the evidence, the error would be regarded as immaterial (*Levitzky* v. *Canning*, 33 Cal. 299); but we think there was evidence of a substantial character bearing directly on the issue of fact, — namely, the necessity for taking the property, — and as this issue was for the jury, it ought to have been left for them to decide.

Among other remarks made by the learned trial judge is the following: "If we were seeking to save the city, and looking to the convenience and economy of the property owners along that line, — yet all the balance of us have it front on the public streets. We are obliged to go from 100 to 120 and 160 feet to make connections. If they have a right to take this, why not seek private property all over the route of the system, instead of using the public streets?" But section 1242 of the Code of Civil Procedure declares that when land

is taken for public use, the use "must be located in the manner which will be most compatible with the greatest public good and the least private injury." The question of necessity in a given case involves a consideration of facts which relate to the public, and also to the private citizen whose property may be injured. The greatest good on the one hand and the least injury on the other are the questions to be determined, and these questions are for the jury, in passing on the question of necessity. The jury may as safely be trusted to rightly solve these questions as the court, and whether so or not, our system of jurisprudence requires that they shall first be submitted to the jury.

We advise that the judgment and order be reversed.

Haynes, C., and Gray, C., concurred.

For the reasons given in the foregoing opinion the judgment and order are reversed.

Garoutte, J., Van Dyke, J., McFarland, J.